<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

<table>
<tr><td>

DIALECTIC DISTRIBUTION, LLC and
DIALECTIC PR, LLC,

     *Plaintiffs*,

     v.

THE B&G GROUP and HUB
INTERNATIONAL NORTHEAST,

     *Defendants*.

</td><td>

Civil Action No. 25-04825

**OPINION**

March 31, 2026

</td></tr>
</table>

**SEMPER**, District Judge.

     The current matter comes before the Court on Defendants B&G Group and HUB International Northeast's ("HUB") motion to dismiss Plaintiffs Dialectic Distribution, LLC and Dialectic PR, LLC's Complaint.  (ECF 1, "Compl.") (ECF 8.) Plaintiffs opposed the motion.  (ECF 13, "Opp.".)  Defendants filed a reply.  (ECF 15, "Reply.")  The Court has decided this motion upon the submissions of the parties, without oral argument, pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.  For the reasons stated below, Defendants' motion to dismiss is **GRANTED**.

**I.**     <u>**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**</u>[1]

     **A.  The Instant Action**

---

[1] The facts and procedural history are drawn from the Complaint and documents integral to or relied upon by the Complaint. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). For the purposes of a motion to dismiss, the facts drawn from the Complaint are accepted as true. *See Fowler v. UMPC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

1

This suit arises from a dispute over insurance coverage related to the government detention, inspection, and release of face masks that Plaintiff imported during the COVID-19 pandemic. (Compl. ¶ 7.)  Plaintiffs Dialectic Distribution, LLC ("Dialectic") and Dialectic PR, LLC are in the business of the wholesale distribution of electronic parts and electronic communications.  (*Id.* ¶¶ 1-2.)  During the early stages of the COVID-19 pandemic, Dialectic decided to buy face masks for resale in the United States.  (*See id.* ¶ 8.) Dialectic engaged HUB to act as its insurance broker and procure insurance coverage, including coverage for losses "related to government confiscation or detention of goods." (*Id.* ¶ 7.)

Dialectic faced risks involving the detention or confiscation of face coverings by government agencies and requested insurance coverage to protect against suck risks.  (*Id.* ¶ 8.)  In April 2020, Dialectic's representatives Mark Hoenes, Zachary Zeltzer and Anthony Ficano communicated with HUB's representative Sophia Jack regarding insurance coverage they sought for a "transaction[.]" (*Id.* ¶ 9.) Plaintiff's representatives requested insurance coverage "in the event that the government intervention caused a diminution in value of the goods being confiscated by the United States government prior to their release[.]" (*Id.* ¶¶ 9-10.) Plaintiffs allege that HUB advised that the coverage requested was in place and included coverage for losses arising from government detentions of facemasks and that an appropriate premium was paid by Plaintiffs.  (*Id.* ¶ 10.)

In May 2020, Plaintiffs purchased face coverings that were "detained but not confiscated" by United States Customs.  (*Id.* ¶ 11.) Plaintiffs allege that on May 15, 2020, Ficano contacted Jack to ask if wording could be included in the insurance policy for "insurance coverage in the event of diminution in value in the event of a government 'hold' on goods." (*Id.* ¶ 12.)  Plaintiffs allege Jack contacted Andrew Hutchings at Price Forbes about this request, and Hutchings

proposed coverage for "Confiscation and Expropriation" with a limit of $750,000 per vessel for an additional premium of $25,000. (*Id.* ¶¶ 13-14.)  Plaintiffs allege that Hutchings asked Jack to respond to a number of questions, and in response to one, Jack requested the wrong coverage by replying that "[t]hey just want to make sure if there [sic] goods are confiscated by the government they will be fully compensated for the claim."  (*Id.* ¶¶ 13-15.)  Plaintiffs allege that in the email Jack "negligently requested the wrong coverage" because Ficano asked for coverage for a "hold," not "confiscation".  (*See id.* ¶¶ 15-17.)   Plaintiffs also allege that Jack responded "ok" to Hutchings' statement that "no claim to attach hereto for delay, deterioration and/or loss of market," which was the coverage Ficano requested (*Id.* ¶ 16.) The email also reflects that the proposed policy was to cover "loss of and/or damage to the property hereby insured directly caused by confiscation, seizure, appropriation, expropriation, requisition for title or us or willful destruction by/or under the order of the Government…" to which Jack responded, "[t]his is what they are looking for." (ECF 8-2, Declaration of Benjamin DiLorenzo ("DiLorenzo Decl.") Ex. C.)[2]

Dialectic alleges that HUB failed to inform Plaintiff of additional coverage options available for government holds and loss of value from Certain Underwriters of Lloyd's, London ("Lloyd's"), even though Plaintiffs had requested such coverage.  (*See id.* ¶ 18.) Dialectic alleges that Defendant HUB's failure to procure the requested coverage and to inform Dialectic of additional coverage options resulted in Plaintiff's inability to recover losses because the face masks

---

[2] Although a court typically does not consider matters outside the pleadings on a motion to dismiss, a court may consider documents that are "integral to or explicitly relied upon in the complaint" or any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document[.]" *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999) (emphasis and citations omitted); *see In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 n.7 (3d Cir. 2016); *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). Because the May 15, 2020 emails are integral to and quoted at length in the Complaint, the Court properly considers these emails in this opinion.

3

were ultimately detained by the United States Customs.  (*Id*. ¶¶ 19-20.) By the time United States

Customers released the face coverings, the market for the items had declined. (*Id.* ¶ 20.)

### B.  The Prior Action

On November 7, 2020, Plaintiffs filed a complaint in the Superior Court of New Jersey for

breach of contract and other causes of action against the insurer, Lloyd's, with reference to Policy

Numbers B0507CG1900631 and BG0507CG2001218 (the "Policies".)  (ECF 8, "Defs. Br.," at

13; DiLorenzo Decl. Ex. D.)

On April 14, 2022, the New Jersey Superior Court ruled that no coverage existed under

Plaintiff's insurance policy, which did not include the United States Customs inspection and

release of the face masks. (Compl. ¶ 21; DiLorenzo Decl. Ex. F.) Lloyd's then filed a motion for

summary judgment seeking dismissal of Plaintiff's complaint with prejudice, which was granted

on August 5, 2022. (DiLorenzo Decl. Ex. H.) In the August 5, 2022 opinion, the Superior Court

held that the "policies' clear plain meaning does not provide coverage for the masks held in

Customers were not damaged, physically altered, or changed in perception by a consumer." (*Id.* at

37.) The court further noted that "[t]he policies alone dictate granting of defendant's summary

judgment motion denying plaintiffs' claim for insurance coverage." (*Id.*) However, the court "also

note[d]" that

> the evidence demonstrates plaintiffs contemplated coverage would not be afforded for
> financial losses from such detainments. Plaintiffs, as evidenced by the emails, were advised
> as to the exclusion of coverage prior to detainment and denied the offer to purchase excess
> insurance coverage offered. Also, the language plaintiffs requested to be included in the
> policies, or in an endorsement, was declined by defendant…detention was contemplated,
> as well as the potential for delays in arrival of masks for sale during the pinnacle of the
> market price. Clearly, plaintiffs assumed the risk by declining greater coverage as the
> policies did not provide for such loss. (*Id.* at 37-38.)

On December 11, 2023, the Appellate Division of the Superior Court of New Jersey

affirmed the decision to grant Lloyd's summary judgement.  (DiLorenzo Decl. Ex. I; *Dialectic*

4

*Distribution LLC v. Certain Underwriters at Lloyd's London*, No. A-3905-21, 2023 WL 8539543, at *1 (N.J. Super. Ct. App. Div. Dec. 11, 2023).)   The court stated, the "central issue is whether the detention of the masks by customs authorities constituted a 'physical loss or damage' to the masks. Our review of the plain language of the policy does not convince us it was ambiguous." *Dialectic Distribution*, 2023 WL 8539543, at *5. The court concluded by stating:

> although we part ways with defendant's assertion on appeal that the judge's ruling was not predicated on findings regarding plaintiffs' awareness of the risk the masks could be seized during the policy procurement period, and extrinsic evidence, including the texts with the manufacturer and emails with the broker, this does not warrant a reversal. This is because the motion judge's opinion makes clear summary judgment in defendants' favor also rested on the independent grounds of interpreting the policy. Our de novo review of the record confirms summary judgment was properly granted based on the interpretation of the policy language alone. Therefore, we do not reach these additional arguments by defendants as they are not dispositive.

*Id.* at *8.

### C.  Procedural History

Plaintiffs initiated this action on April 8, 2025 in state court. (ECF 1 at 1-8.)   In the Complaint, Plaintiffs bring claims for negligence (Count 1), breach of fiduciary duty (Count 2), professional malpractice (Count 3), fraud by omission (Count 4), breach of contract (Count 5), and breach of the covenant of good faith and fair dealing (Count 6). (Compl. ¶¶ 7-48.) On May 20, 2025, Defendants HUB and B&G removed this action from the Superior Court of New Jersey based on diversity under 28 U.S.C. § 1332.  (ECF 1.)  Defendants moved to dismiss the Complaint on June 24, 2025, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). (ECF 8.)   On August 4, 2025, Plaintiffs filed an opposition to Defendant's motion to dismiss.  (ECF 13, "Opp.") On August 11, 2025, Defendants filed a reply.  (ECF 15, "Reply.")

## II.    LEGAL STANDARD

### A.  Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a count for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). If, after viewing the allegations in the complaint most favorably to the plaintiff, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss the complaint for failure to state a claim. *DeFazio v. Leading Edge Recovery Sols.*, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010).

**B.  Rule 9(b)**

Federal Rule of Civil Procedure 9(b) imposes additional pleading requirements for claims of fraud. Fed. R. Civ. P. 9(b).  "Independent of the standard applicable to Rule 12(b)(6) motions, Rule 9(b) imposes a heightened pleading requirement of factual particularity with respect to allegations of fraud." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.,* 311 F.3d 198, 216 (3d Cir. 2002).  Thus, pursuant to Rule 9(b), when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake . . . [m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  A party alleging fraud must therefore support its allegations with factual details such as "the who, what, when, where and how of the events at issue." *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016) (citation omitted). Accordingly, "[t]o satisfy the particularity standard, 'the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.'" *Feingold v. Graff*, 516 F. App'x 223, 226 (3d Cir. 2013) (quoting *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)).  This heightened standard is designed to "ensure that defendants are placed on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of fraud." *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989) (internal quotation marks omitted).

## III.    ANALYSIS

### A.  Collateral Estoppel

Defendants argue that Plaintiffs' claims against Defendants are barred by the doctrine of collateral estoppel because the Superior Court has already determined that Dialectic was offered but denied insurance coverage for a government hold on the facemasks. (Br. at 12-21.)

Whether a state court judgment should have a preclusive effect in a subsequent federal action depends on the law of the state that adjudicated the original action. *Mann v. Est. of Meyers*, 61 F. Supp. 3d 508, 517 (D.N.J. 2014) (citing *Greenleaf v. Garlock, Inc.,* 174 F.3d 352, 357 (3d Cir. 1999)). Under New Jersey law, a party seeking to invoke the doctrine of collateral estoppel must demonstrate that: (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding. *Allen v. V & A Bros., Inc.*, 208 N.J. 114, 138 (2011). "New Jersey courts follow the doctrine of collateral estoppel or the rule of issue preclusion described in the Restatement of Judgments." *Barker v. Brinegar*, 788 A.2d 834, 839 (N.J. Super. Ct. App. Div. 2002) (quoting *Hernandez v. Region Nine Hous. Corp.*, 146 N.J. 645, 659 (1996)); *see also Olivieri v. Y.M.F. Carpet, Inc.*, 186 N.J. 511 (2006) (relying on the Restatement of Judgments in analyzing collateral estoppel)).

However, as the Restatement of Judgments explains, issue preclusion does not apply to issues an appellate court declines to consider on appeal, even when the appellate court affirms the overall judgment. *See* Restatement (Second) of Judgments § 27, cmt. o (Am. Law Inst. 1982) ("If the appellate court upholds one of the[ ] determinations [of the court of first instance] as sufficient and refuses to consider whether or not the other is sufficient and accordingly affirms the judgment, the judgment is conclusive as to the first determination"); 18 Federal Practice & Procedure § 4421 (3d ed. 2020 update) ("The federal decisions agree with the Restatement view that once an appellate court has affirmed on one ground and passed over another, preclusion does not attach to the ground omitted from its decision"); *see also Arab Afr. Int'l Bank v. Epstein*, 958 F.2d 532, 537

(3d Cir. 1992) ("an alternative holding by a court of first instance "is not conclusive with respect to either issue standing alone.") (citing Restatement (Second) of Judgments § 27, cmt. I)).

In the August 5, 2022 opinion, the Superior Court granted Lloyd's motion for summary judgment on two independent bases: (1) the language of the insurance policies, and (2) its finding that Dialectic was aware of customs risks and could have, but declined to, purchase additional insurance coverage. (*See* DiLorenzo Decl. Ex. H.) The appellate court, however, affirmed the Superior Court's decision only on the first basis, the language of the policies. *Dialectic Distribution*, 2023 WL 8539543, at *8. The Appellate Division stated in its opinion: "[o]ur de novo review of the record confirms summary judgment was properly granted based on the interpretation of the policy language alone. Therefore, we do not reach these additional arguments by defendants as they are not dispositive." *Id.* Guided by the commentary set forth in the Restatement (Second) of Judgments, the Court concludes that issue preclusion does not apply to the question of whether Dialectic declined to purchase additional insurance coverage. Because the parties' dispute here centers on that issue (*See generally* Br.), the Court will not apply collateral estoppel.

### B. Negligence (Count One)

Plaintiffs' first cause of action for negligence fails to state a claim. "Negligence involves a breach of a duty of care that causes injury." *Roccisano v. Twp. of Franklin*, No. 11-6558, 2013 WL 3654101, at *11 (D.N.J. July 12, 2013) (citing *Weinberg v. Dinger*, 106 N.J. 469, 484 (1987)). Thus, "to succeed on a negligence claim, a plaintiff must show: (1) a duty of care, (2) a breach of that duty, (3) causation, and (4) actual damages." *Id.* (citing *Weinberg*, 106 N.J. at 484). Under New Jersey law, "insurance brokers are expected to possess a reasonable 'degree of skill and knowledge' and to exercise 'good faith and reasonable skill, care and diligence in the execution of

the[ir] commission,' and to 'provide the coverage he undertook to supply.'" *Minnesota Life Ins. Co. v. Cooke*, No. 20-14326, 2021 WL 5122070, at \*6 (D.N.J. Nov. 4, 2021) (quoting *Rider v. Lynch*, 42 N.J. 465, 476 (1964)).

Plaintiffs have not adequately alleged that Defendants breached their duty to Plaintiffs. Plaintiffs allege that HUB failed to inform Dialectic of additional coverage options available from Lloyd's and that HUB failed to procure the coverage Dialectic requested. (Compl. ¶¶ 18-19.) However, Plaintiffs do not allege that such coverage was available or any facts regarding its communications with HUB. (*See generally id.*) Moreover, the email Dialectic references in its Complaint is insufficient on its own to state a cause of action for breach of fiduciary duty. This email reflects only an initial conversation between the broker and Hutchings and does not provide any detail regarding the coverage options HUB offered Dialectic. (*See* DiLorenzo Ex. C.) Most significantly, Plaintiffs' Complaint omits the key language from Hutchings' email proposing coverage of "loss of and/or damage to the property hereby insured directly caused by confiscation, seizure, appropriation, expropriation, requisition for title or us or willful destruction by/or under the order of the Government…," which includes coverage for seizure. (DiLorenzo Decl. Ex. C.) Plaintiffs' negligence claim is dismissed.

### C. Breach of Fiduciary Duty (Count Two)

To state a claim for breach of fiduciary duty, a party must show (1) a fiduciary duty existed between the plaintiff and defendant, (2) the defendant breached that duty, and (3) damages as a result of the breach. *Jeffrey Rapaport M.D., P.A. v. Robin S. Weingast & Assocs., Inc.*, 859 F. Supp. 2d 706, 717 (D.N.J. 2012). Insurance brokers stand in a fiduciary capacity with their clients, to whom they owe a duty to exercise reasonable skill and good faith. *Aden v. Fortsh*, 169 N.J. 64, 78–79 (2001). However, because "'[l]iability resulting from the negligent procurement of

10

insurance is premised on' the client's reliance on the broker's expertise, it is 'essentially one of professional malpractice.'" *Cooke*, 2021 WL 5122070, at *7 (quoting *Aden*, 169 N.J. at 79).[3] "While a plaintiff may plead in the alternative, under New Jersey law, negligence and breach of fiduciary duty claims against an insurance broker are not alternative causes of action, but rather, constitute a single cause of action for negligence." *Id.* (collecting cases). For that reason, Dialectic has failed to state a standalone claim for breach of fiduciary duty.

### D. Professional Malpractice (Count Three)

"A professional negligence claim against an insurance broker centers on the fiduciary relationship arising between the broker (an agent) and the client (the agent's principal)." *Harford Mut. Ins. Co. v. Z&D Realty, LLC*, 648 F. Supp. 3d 499, 515-16 (D.N.J. 2022) (citing *Aden*, 169 N.J. at 78). If a broker "neglects to procure the insurance or if the policy is void or materially deficient or does not provide the coverage he undertook to supply, because of his failure to exercise the requisite skill or diligence, he becomes liable to his principal for the loss sustained thereby." *Id.* (quoting *Rider*, 42 N.J. at 476). A plaintiff can establish a prima facie case of negligence against a broker if: (1) the broker neglects to procure the insurance; (2) the broker secures a policy that is either void or materially deficient; or (3) the policy does not provide the coverage the broker undertook to supply. *President v. Jenkins,* 180 N.J. 550, 569 (2004) (citing *Rider*, 42 N.J. at 476). "If an agent or broker fails to exercise the requisite skill and diligence when fulfilling those

---

[3]Some courts in this district have treated breach of fiduciary duty claims as separate from negligence claims, particularly "if the facts to support…breach of fiduciary duty are pleaded properly, they may state [a] separate, non-duplicative claim[ ] from a [professional] malpractice claim." *Fink v. Kirchner*, No. 12-4125, 2013 WL 1952303, at *3 (D.N.J. May 8, 2013); *see also Canusa Corp. v. Owens Grp. LTD., Inc.*, No. 16-09081, 2019 WL 6910172, at *9 (D.N.J. Dec. 19, 2019) (noting that breach of fiduciary duty is a separate tort from negligence because it is an "intentional tort"). Here, Plaintiffs' negligence and breach of fiduciary duty claims are premised on the same conduct, and Plaintiffs do not allege that Defendants acted intentionally. (*See* Compl. ¶¶ 26-29.) Based on the allegations here, Plaintiffs' breach of fiduciary duty claim is duplicative of its negligence claim.

obligations, then there is a breach in the duty of care, and liability arises." *Id.* (citing *Rider*, 42 N.J. at 476). For the same reasons as stated in Section III.C., *supra*, Plaintiffs have failed to allege a breach of the duties that HUB owed Dialectic, and therefore this claim also fails.

### E.  Fraud by Omission (Count Four)

To establish fraud under New Jersey law, a plaintiff must prove that "the defendant made (1) a material misrepresentation of present or past fact (2) with knowledge of its falsity (3) with the intention that the other party rely thereon (4) and which resulted in reasonable reliance by plaintiff." *Read v. Profeta*, 397 F. Supp. 3d 597, 635 (D.N.J. 2019) (citations omitted). "The suppression of truth, the withholding of the truth when it should be disclosed, is equivalent to the expression of falsehood." *Laufer v. Fanucci*, No. 3714-13T4, 2015 WL 2236527, at *4 (N.J. Super. Ct. App. Div. May 14, 2015) (quoting *Strawn v. Canuso*, 140 N.J. 43, 62 (1995)). Rule 9(b)'s specificity requirement applies to fraudulent concealment claims. *GKE Enters., LLC v. Ford Motor Credit Co. LLC USA*, No. 09-4656, 2010 WL 2179094 at *4 (D.N.J. May 26, 2010).

Dialectic alleges that HUB "knowingly failed to disclose the availability of additional coverage options, including coverage for detainment and loss of market, to Dialectic." (Compl. ¶ 37.) This allegation is conclusory and insufficient to state a claim. There are no allegations about what additional coverage options HUB failed to disclose to Plaintiffs. (*See generally id.*) In fact, there are no allegations at all about communications or interactions between HUB and Dialectic. "A fraud-by-omission claim is sufficient so long as it places 'the defendant on notice of the precise misconduct with which it is charged[.]'" *Rickman v. BMW of N. Am.*, No. 18-4363, 2020 WL 3468250, at *12 (D.N.J. June 25, 2020) (quoting *Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 443 (D.N.J. 2012)). Plaintiffs' fraud by omission claim fails to do so.

12

### F.  Breach of Contract (Count Five)

Plaintiffs' breach of contract claim must be dismissed because "under New Jersey law, a claim against insurance agents or brokers for failing to obtain the proper insurance is not recognized as a claim for breach of contract but rather for negligence." *Cooke*, 2021 WL 5122070, at *5. In any case, Plaintiffs have failed to plead a breach of contract. To establish a breach of contract claim, Plaintiffs must show: the parties entered into a contract, containing certain terms; Plaintiffs performed what was required under the contract; Defendants did not fulfill their obligation under the contract; and Defendants' breach caused a loss to plaintiffs. *Globe Motor Co. v. Igdalev*, 225 N.J. 469, 482 (2016) (citing Model Jury Charge (Civil) § 4.10A "The Contract Claim—Generally" (May 1998)).

Here, Plaintiffs only generally allege that the parties entered into a contract and HUB breached that contract by failing to secure the requested insurance coverage. (Compl. ¶ 44.) Plaintiffs fail to plead with sufficient particularity HUB's obligations under the contract and how its actions regarding the requested hold coverage breached that contract. The Court dismisses this claim.

### G.  Breach of Covenant of Good Faith and Fair Dealing (Count Six)

"A covenant of good faith and fair dealing is implied in every contract in New Jersey." *Wilson v. Amerada Hess Corp.*, 773 A.2d 1121, 1126 (N.J. 2001) (citing *Sons of Thunder, Inc. v. Borden, Inc.,* 148 N.J. 396, 420 (1997)). "A party to a contract breaches the covenant if it acts in bad faith or engages in some other form of inequitable conduct in the performance of a contractual obligation." *Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 288 (3d Cir. 2000) (citation omitted). "No claim for a breach of the covenant of good faith and fair dealing may lie, however, unless the underlying conduct is distinct from that alleged in a corresponding breach of

13

contract claim." *MZL Cap. Holdings, Inc v. TD Bank, N.A.*, 734 F. App'x 101, 106 (3d Cir. 2018) (citing *Wade v. Kessler Inst.*, 172 N.J. 327 (2002)). Plaintiffs rely on the very same conduct in asserting their breach of covenant of good faith and fair dealing claim as they do in asserting their breach of contract claim. (*See* Compl. ¶ 47.) Because the breach of covenant of good faith and fair dealing claim is not distinct, the Court dismisses this claim.

## IV.    CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is **GRANTED**. Plaintiff's Complaint is **DISMISSED** without prejudice for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Within thirty (30) days, Plaintiffs may file an amended complaint. An appropriate order follows.

*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig:       Clerk
cc:         Leda D. Wettre, U.S.M.J.
            Parties

14